

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| EL PASO PRODUCTION GOM, INC., CHEVRON U.S.A. INC. AND FOREST OIL CORPORATION | CIVIL ACTION |
| VERSUS | NO: 04-2121 c/w 04-2849 AND 05-0140 |
| LATHAM C. SMITH, individually and d/b/a SMITH MARITIME, LATHAM MARITIME, DANA MARINE SERVICE, INC., and PETROFAC, INC. | SECTION: "R"(2) |

### ORDER AND REASONS

Claimants El Paso Production GOM, Inc., Chevron U.S.A. Inc., Forest Oil Corporation (collectively, the "Platform Claimants"), and Petrobras Netherlands B.V. move to contest the form of security posted in case number 05-0140, a limitation of liability proceeding commenced by Skipsaksjeselskapet Kysten, Ugland Construction AS, and Dana Marine Service, Inc., as owner, managing owner and owner *pro hac vice* respectively (collectively, the "Owners"), of the Barge UR-95. For the following reasons, the Court GRANTS the motion.

I.  **BACKGROUND**

On July 20, 2004, the Barge UR-95, under the tow of the tug M/V RHEA, allided with unmanned Ship Shoal Platform 227-A, which is owned by the Platform Claimants, in the Gulf of Mexico. The allision damaged the platform, the Barge UR-95, and the cargo aboard the Barge UR-95. On July 29, 2004, the Platform Claimants filed an *in personam* action in this Court seeking damages. On that same date, the Platform Claimants also filed an *in rem* action against the M/V RHEA and the Barge UR-95 in the U.S. District Court for the Southern District of Florida. The Platform Claimants' *in rem* complaint asserted a maritime lien against the M/V RHEA and the Barge UR-95 and sought the arrest of the two vessels. On July 31, 2004, the U.S. Marshal arrested the two vessels off the coast of Key West, Florida.

On August 4, 2004, the law firm of Fowler, White, Burnett P.A., as Attorney-in-Fact of Gard P&I, provided a letter of undertaking on behalf of the Barge UR-95 in the amount of $3 million to secure the Barge UR-95's release. The letter of undertaking provided, in part:

> In consideration of your releasing from arrest, the Barge "UR-95" in connection with suit which you have instituted in the United States District Court for the Southern District of Florida . . . and in further consideration of your not arresting or attaching any other vessel of the same ownership or any other property belonging to her owners, the undersigned Association hereby agrees:

2

> 1. To file, or cause to be filed, a Claim of Owner of the Barge "UR-95" in the suit that you have caused to be instituted in the United States District Court for the Southern District of Florida.
>
> 2. In the event final decree, after appeal, if any, be entered in favor of the Plaintiffs against the Barge "UR-95" then the undersigned Association agrees to pay and satisfy (up to and not exceeding the sum of Three Million Dollars and No Cents ($3,000,000.00)), the said final decree or any lesser amount decreed by the Court or settled between the parties where said settlement has been made with the approval of the undersigned Association without any final decree being rendered; and
>
> 3. Upon written demand to cause to be filed a bond in form and sufficiency satisfactory to you or the Court in the above amount securing claim against the vessel, the amount of the bond not to exceed the amount stated in subparagraph 2 above.

(Platform Claimants' Mem. Ex. A, at 1-2). On August 27, 2004, the Barge UR-95 answered the Platform Claimants' *in rem* complaint and asserted, *inter alia*, the defense of limitation of liability. (*See* Owners' Mem. Ex. A, at 4).

The Platform Claimants' *in rem* action was later consolidated with a limitation of liability proceeding filed by the owners of the M/V RHEA. Those actions were eventually transferred to this Court and consolidated with the Platform Claimants' *in personam* action.

On January 18, 2005, the Owners filed a limitation of liability proceeding in this Court. The Owners did not provide

new or additional security with their complaint in limitation. Instead, the Owners filed a declaration from counsel confirming that the above-described letter of undertaking had been filed in the *in rem* action. On January 21, 2005, this Court signed an Order accepting the letter of undertaking as security for the Owners' limitation proceeding.

The Platform Claimants and Petrobras Netherlands now challenge the Owners' use of the letter of undertaking as security in the limitation proceeding. They argue that the Owners are required to post new security for the limitation proceeding. The Owners oppose the motion.

## II.  DISCUSSION

The issue the Court must resolve on this motion is whether the letter of undertaking filed to secure the release of the Barge UR-95 in the Platform Claimants' *in rem* proceeding can also be used as security in the Owners' later-filed limitation of liability proceeding.

### A.  Vessel Arrest and Release

Supplemental Admiralty Rule C to the Federal Rules of Civil Procedure permits a party who seeks to enforce a maritime lien to bring an action *in rem* against the vessel or other property on which the lien is claimed. *See* Fed. R. Civ. P. Supp. R. Admiralty & Maritime Claims C(1). Once an *in rem* action is commenced, the plaintiff can obtain a warrant for the arrest of

4

the vessel or property that is the subject of the action. *See id.* R. at C(3).

After a vessel has been arrested, the owner can secure its release is by posting a "special bond." *See id.* at R. E(5). Under Admiralty Rule E(5), a vessel must be released from arrest upon "the giving of security . . . or by stipulation of the parties, conditioned to answer the judgment of the court or of any appellate court." *Id.* The amount of such security may be stipulated by the parties. *Id.* A letter of undertaking, such as that provided by the Owners here, is "customary within the maritime industry." *Chiquita Int'l Ltd. v. Liverpool & London S.S. Prot. & Indem. Ass'n*, 124 F. Supp. 2d 158, 167 (S.D.N.Y. 2000). It is the functional equivalent of a bond for the purpose of securing a claim against a vessel. *See Panaconti Shipping Co. v. M/V YPAPANTI*, 865 F.2d 705, 707-08 (5th Cir. 1989).

A special bond or letter of undertaking effectively replaces the arrested property for purposes of the *in rem* action, allowing the owner to continue to use the property, while providing the plaintiff with security for any judgment it may obtain against the vessel. Unlike a "general bond,"[1] which requires court

---

[1] Admiralty Rule E(5) also provides for the release of an arrested vessel upon the filing of a "general bond." *See* Fed. R. Civ. P. Supp. R. Admiralty & Maritime Claims E(5). A general bond is more burdensome for the shipowner than a special bond, as it requires court approval, it must be intended to secure against any and all judgments against the vessel in the court where the bond is filed, and the amount of security must at all times be no

approval and is "conditioned to answer the judgment of [the] court in all or any actions that may be brought," Fed. R. Civ. P. Supp. R. Admiralty & Maritime Claims E(5), a special bond is claim-specific; that is, it does not provide security for other claims against the vessel. *See Overstreet v. Water Vessel Norkong*, 706 F.2d 641, 644 (5th Cir. 1983) (surety bond is "posted to assure the payment of a single claim, not to stand in place of the vessel for all claims that might be asserted against her"); *In re Moore*, 278 F. Supp. 260, 266 (E.D. Mich. 1968) ("Unlike his counterpart who looks to the fruits of the sale of a vessel, the obligee of a contract cannot be made to share its proceeds with co-equal or preferred lienors.").

The letter of undertaking that the Owners posted to secure the release of the Barge UR-95 was in the nature of a special bond. The letter of undertaking specifically states that it is given in consideration for the Platform Claimants' release of the Barge UR-95 in connection with their *in rem* action, and it states that Gard P&I agrees to satisfy any judgment in favor of the Platform Claimants in that action up to $3 million. The letter of undertaking contains no mention of other existing or potential

---

less than twice the amount claimed by all plaintiffs in all actions then pending or filed. *Id.* The benefit to the shipowner of a general bond is that it prevents any subsequent arrest of the vessel by any claimant. *Id.* A special bond, by contrast, prevents only the party to whom the security is given from later arresting the vessel.

6

claims.

### B.   Limitation of Liability

The Limitation of Liability Act, 46 U.S.C. app. §§ 181, *et seq.*, allows a shipowner to limit its liability for damages arising out of a maritime accident involving a vessel to the "amount or value of the interest of such owner in such vessel, and her freight then pending." *Id.* § 183(a).  A shipowner can assert its right to limitation of liability in one of two ways. First, the shipowner can claim limitation by pleading it as a defense in an answer to a claim in any court.  *See id.; Karim v. Finch Shipping Co.*, 265 F.3d 258, 263 (5th Cir. 2001). Alternatively, the shipowner can file a limitation of liability proceeding in federal district court under section 185 of the Limitation of Liability Act.  *See* 46 U.S.C. app. § 185; *Karim*, 265 F.3d at 263-64.  To proceed under section 185, the shipowner must file its limitation petition "within six months after a claimant shall have given to or filed with such owner written notice of claim" and must post security "equal to the amount or value of the interest of such owner in the vessel and freight." 46 U.S.C. app. § 185.

When a shipowner brings a limitation proceeding and fulfills the procedural requirements of section 185, the district court must stay all other proceedings against the owner arising out of the same incident.  *See id.* ("Upon compliance with the

7

requirements of this section all claims and proceedings against the owner with respect to the matter in question shall cease."); Fed. R. Civ. P. Supp. R. Admiralty & Maritime Claims F(3) ("On application of the plaintiff the court shall enjoin the further prosecution of any action or proceeding against the plaintiff or the plaintiff's property with respect to any claim subject to limitation in the action."). Parties who wish to assert claims against the shipowner are then permitted to file their claims in the limitation proceeding. *See* Fed. R. Civ. P. Supp. R. Admiralty & Maritime Claims F(4)-(6). This procedure "is known as a 'concursus,' and the purpose behind such a proceeding in federal court is to permit all actions against the shipowner to be consolidated into a single case so that all claims may be disposed of simultaneously . . . ." *Karim*, 265 F.3d at 264.

There are several major differences between asserting limitation of liability as a defense under section 183 and instituting a limitation action under section 185. First, a section 185 limitation proceeding must be begun within six months after the owner receives notice of a claim. 46 U.S.C. app. § 185. Limitation may be invoked by way of a defense to a particular claim at any time. Second, unlike section 185, section 183 does not require the shipowner to post a bond as security. *See May v. Falcon Drilling Co.*, Civ. A. No. 95-0189, 1995 WL 569210, at *1 (E.D. La. Sept. 27, 1995). Third, section

183 does not provide the shipowner with the procedural advantages conferred under section 185. Merely asserting limitation as a defense in a pending action does not bring all claims arising out of the incident together in a single forum, and it does not stay other actions pending against the ship or its owners.

Despite these procedural differences, the shipowner's substantive rights are the same whether it elects to invoke section 183 by way of a defense or file a limitation proceeding under section 185. In either case, a shipowner who qualifies for limitation is entitled to limit its total liability from a single incident to the value of its interest in the ship and her freight then pending. See *Signal Oil & Gas Co. v. Barge W-701*, 654 F.2d 1164, 1174 (5th Cir. Unit A Sept. 1981) ("[A] vessel owner's decision to plead limitation as a defense . . . under section 183, rather than to petition under section 185, does not open it to greater total liability."); *Blunk v. Wilson Line of Wash.*, 341 F. Supp. 1345, 1349 (N.D. Ohio 1972) ("Waiver of the right to petition for a limitation proceeding does not waive the right of a ship owner to raise Section 183 . . and thereby avail himself of the full protection of the Limitation of Liability Act.").

**C.  Analysis**

The Platform Claimants argue that the Letter of Undertaking cannot be used as security in the limitation proceeding for two reasons. First, the Platform Claimants argue that the letter of

9

undertaking is insufficient to satisfy 46 U.S.C. app. § 185, which sets out the formal requirements for a limitation bond, and Admiralty Rule F(1) because it does not (i) purport to bind Gard P&I in the limitation proceeding; (ii) contain a stipulation for the amount of pending freight; or (iii) provide for interest at the rate of 6 percent per year.

Second, the Platform Claimants assert that, regardless of those requirements, the Owners cannot simply transfer the letter of undertaking from the Platform Claimants' *in rem* action to the limitation proceeding. The Platform Claimants assert that the Owners should be required to maintain the letter of undertaking as security for the *in rem* action and post a separate undertaking for the limitation action.

The Owners oppose Claimants' motion on the ground that it would be unfair to require them to post security twice for the same vessel in connection with the same incident. They do not, however, object to modifying the Letter of Undertaking to bring it into compliance with the formal requirements of 46 U.S.C. app. § 185 and Admiralty Rule F(1).

Before considering the substance of Claimants' motion, it is important to clarify the practical significance of this motion. The Court's resolution of this issue will not affect the Owners' potential overall liability. If it is determined in this proceeding that the Owners are entitled to limitation, their

liability will be no more than the value of their interests in the Barge UR-95 plus pending freight, to be apportioned among all successful claimants. If, on the other hand, the Owners are denied limitation, their total liability could potentially be several times that amount, and it will be determined on a claim-by-claim basis.

The outcome of this motion is significant only in the latter situation. If the Owners are required to post a separate bond for this proceeding and limitation is then denied, the Platform Claimants will at that point have the option of returning to their *in rem* action to pursue their claims, and those claims will be secured for up to $3 million, to the exclusion of all other claimants, by the letter of undertaking. *See Narragansett Fishing Corp. v. F/V Bob n Barry*, 425 F.2d 733, 734 (1st Cir. 1970) (if limitation denied, claimant "may elect to return to his original libel"); *In re Moore*, 278 F. Supp. 260, 266 (E.D. Mich. 1968) ("The letter of undertaking is still viable and assures Huron . . . reimbursement in accordance with its conditions should the hearing . . . reveal the company's demand to be of a type not susceptible to restriction."). If, however, the letter of undertaking serves as security for the limitation proceeding, that security would be available for all of the claimants if limitation is denied. *See Hartford Accident & Indem. Co. of Hartford v. S. Pac. Co.*, 273 U.S. 207, 217 (1927) (admiralty

court "may furnish a complete remedy for the satisfaction of . . . claims by distribution of the res" if limitation is denied).

The Platform Claimants rely heavily on *Narragansett Fishing Corp. v. F/V Bob n Barry*, 425 F.2d 733 (1st Cir. 1970), as support for their argument that separate security must be provided. *Narragansett Fishing Corp.* involved a collision between two vessels — the F/V Bob n Barry and the F/V Sea Ranger. *See id.* at 734. After the incident, the owner of the Sea Ranger libeled the Bob n Barry. *Id.* The owners of the Bob n Barry answered the complaint, without raising limitation of liability as a defense, and they then posted a bond to secure the Bob n Barry's release. *Id.* Months later, the owners of the Bob n Barry filed a limitation proceeding and posted a second bond as security for that action. *Id.* They moved to discharge the original bond on the ground that they could not be required to maintain two bonds for the value of the same vessel. *Id.* The district court granted the motion to discharge.

The Fifth Circuit reversed, holding that the owners of the Bob n Barry could not be relieved of their voluntary decision to post two separate bonds. *See id.* At the outset, the court noted that if limitation were allowed, the owner of the Sea Ranger would be limited in its recovery to its pro rata share of the limitation bond. *Id.* If limitation were denied, however, the owner of the Sea Ranger would be permitted to resume its original

action against the Bob n Barry. *See id.* If the bond were discharged, the owner of the Sea Ranger would have no security for its claims other than the limitation bond, which would be subject to the claims of all potential claimants. If the bond were maintained, however, the owner of the Sea Ranger would have the entire amount of the original bond, against which no other parties could claim, to secure any judgment it might obtain. *See id.* The court found that under such circumstances, "[p]laintiff's rights are not to be jeopardized in order to save the owners of the Bob n Barry the cost of maintaining the bond it voluntarily gave." *Id.*

The Owners rely, for their part, on the Fifth Circuit's decision in *Signal Oil & Gas Co. v. Barge W-701*, 654 F.2d 1164 (5th Cir. Unit A Sept. 1981). In *Signal Oil & Gas Co.*, a shipowner asserted limitation of liability by way of a defense in a multiple-claimant case that was consolidated for trial, as opposed to bringing a separate limitation proceeding under section 185. *See id.* at 1173. On appeal after trial, one of the parties argued that when a shipowner asserts limitation of liability as a defense rather than by separate proceeding under section 185, it is required to establish a separate limitation fund for each claim. *Id.* at 1174. The Fifth Circuit rejected that argument. After observing that "accepting this argument would require, at a minimum, doubling the amount for which [the

13

owner] would be liable," the court held that "a vessel owner's decision to plead limitation as a defense in a single action with multiple claimants under section 183, rather than to petition under section 185, does not open it to greater total liability." *Id.*

The Court finds the reasoning of *Narragansett Fishing Corp.* persuasive. Here, as in that case, the Owners voluntarily posted security in favor of the Platform Claimants before instituting a limitation proceeding under section 185 and before asserting any defense of limitation of liability. The letter of undertaking in this case was given independently of the Owners' claim of limitation. Its purpose was to secure the release of the Barge UR-95 and to permit the Owners to continue to use the vessel during the pendency of the Platform Claimants' *in rem* action. *Cf. In re Moore*, 278 F. Supp. at 266 ("By the simple expedient of posting [a] bond . . . an owner can obtain [the vessel's] release and use her as he pleases."). Having freely given security in exchange for the release of the Barge UR-95, the Owners will not now be heard to complain that it is unfair to require them to maintain that security. *Narragansett Fishing Corp.*, 425 F.2d at 734.

The Owners argue that because they raised limitation of liability as a defense to the Platform Claimants' original *in rem* action, they obtained an "obligatory concourse" and cannot be

14

required to post additional security. This argument is meritless. That the Owners here later asserted limitation of liability as a defense in the *in rem* action is irrelevant. The Owners provided the Platform Claimants with the letter of undertaking over three weeks before they asserted the defense of limitation of liability. Thus, at the time the letter of undertaking was provided, no concursus of claims could have existed.

More importantly, as discussed *supra*, invoking limitation of liability by way of a defense does not itself create a concursus of claims or operate to stay other actions pending against the vessel owner. Only compliance with the procedures set forth in section 185 results in a concursus of claims. *See Am. Tobacco Co. v. The Katingo Hadjipatera*, 211 F.2d 666, 668 (2d Cir. 1954) (compliance with section 185 is statutory condition to establishing concursus); *Blunk*, 341 F. Supp. at 1349 (section 183 "deals with the limitation amount," while section 185 "deals with the method by which a ship owner may petition a court for a limitation proceeding, thus halting any proceedings on claims asserted against it").

The Owners assert that they acted within their rights by asserting limitation of liability only as a defense in the *in rem* action, as opposed to filing a limitation action, because they were faced with only one claim at that time. This is undoubtedly

a true statement. But the burden of invoking section 185 is on the shipowner, and the shipowner cannot claim its protections without first complying with its terms. See *Am. Tobacco Co.*, 211 F.2d at 668 ("To secure the benefits of the statute the petitioner must comply with the statutory conditions upon the right to bring about a concourse."); cf. *The Four Sisters*, 75 F. Supp. 399, 402 (D. Mass. 1947) ("[T]he advantages of consolidation or concourse should be claimed by the shipowner. The burden is not upon the claimants to secure to the shipowner this advantage."). In this case, the Owners waited until January 18, 2005 to file their limitation petition. The Court will not now tax the Platform Claimants for diligently pursuing their legal rights before that date. See *Narragansett Fishing Corp.*, 425 F.2d at 734; *Huasteca Petroleum Co. v. Cia. De Navegacao Lloyd Brasileiro*, 297 F. 318, 321 (E.D.N.Y. 1924) (denying motion to vacate attachments obtained before limitation proceeding filed; "[I]f the attachments are vacated and the limitation of liability is not allowed, the libelents will lose all the security they by diligence have acquired.").

Finally, the Owners' reliance on *Signal Oil & Gas Co.* is misplaced. The issue in that case was whether the vessel owner was required to establish multiple limitation funds for a single proceeding, thus subjecting it to greater total liability. Here, however, as the Court has discussed, requiring the Owners to file

16

additional security in the limitation proceeding will have no effect on the ultimate amount of their liability.  If the limitation action succeeds, all claimants, including the Platform Claimants, will be limited to the amount of the limitation bond. If it fails, the letter of undertaking will serve merely to secure the Platform Claimants' ability to collect for any claims on which they prevail.

### III. CONCLUSION

For the reasons stated above, the Court GRANTS Claimants' motion to contest the form of security in case number 05-1040. The Court VACATES that portion of its January 21, 2005 order that approved the letter of undertaking as security for the limitation proceeding and ORDERS the Owners to provide appropriate security for the limitation proceeding.

Baton Rouge, Louisiana, this 14th day of October, 2005.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE